UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | | |
|---|---|---|
| MISTDENA GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 4:25-CV-61 |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**OPINION AND ORDER**

On October 13, 2025, Claimant brought this action under 42 U.S.C. §§ 405(g) for review of the final decision of the Commissioner of Social Security. [Doc. 1]. Upon consent of the parties pursuant to 28 U.S.C. § 636(c), this Court has jurisdiction over this matter through entry of final judgment. [Doc. 13].

Claimant filed her brief [Doc. 11] on January 13, 2026, and contends that this matter should be remanded because Administrative Law Judge Michael R. Swan ("ALJ") failed to properly support his conclusion regarding Claimant's residual functional capacity ("RFC") by failing to adequately evaluate the opinion evidence offered by Danielle L. Terry, Ph. D. The Commissioner filed a response, arguing that the ALJ provided substantial support for his determination because the ALJ determined that Dr. Terry's opinion was only mostly persuasive, and he was not required to specifically articulate the reasons for rejecting the remainder of Dr. Terry's opinion. [Doc. 15]. Further, the Commissioner asserted that Dr. Terry was the only provider who opined that Claimant was limited to jobs which required only one to two step procedures and provided schedule flexibility so Claimant could seek mental health treatment as needed. Finally, the Commissioner argued that

the ALJ's determination fell within the zone of choice. Claimant then filed a Reply. [Doc. 17].

The Court then conducted a hearing in this matter by video on July 30, 2026, during which the Court addressed the parties' briefs. During the hearing, Maren Miller Bam, Esq. appeared and offered argument for Claimant and Kevin Murphy, Esq. appeared and offered argument for the Commissioner. The Court advised the parties before they offered their arguments that it had reviewed the record in the case and their filings. The Court will now address the issue raised by Claimant in light of the parties' filings, oral argument of counsel, and the record before the Court.

## I. APPLICABLE LAW

A review of the Commissioner's findings is narrow. The Court is limited to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 721 (S. D. Ohio 2019). "It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury." *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986). The Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). At the same time, the Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001); *see also Kushner v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 797, 802 (E.D. Mich. 2019). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc.*

*Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). To that end, in evaluating the ALJ's decision here, the Court notes that he was entitled to a "zone of choice" in determining whether Claimant was disabled if the facts could support a ruling either way. *Blakely*, 581 F.3d at 406.

For that reason, the Court must not disturb the ALJ's decision even if it would have decided the matter differently so long as the ruling was rendered in compliance with applicable law and is based on substantial evidence. On the other hand, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

In this case, Claimant has asked for a closed period of benefits from December 27, 2021 through April 15, 2024, following a bout with COVID after which she developed post-COVID psychosis, anxiety with panic disorder, and major depressive disorder. The Sixth Circuit has held that although the Social Security Act does not provide for a closed period of benefits, a closed period of benefits may be awarded. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972) (citing 42 U.S.C. § 416(i)(2)(D) and (E) (2004)). A claimant must meet the twelve-month durational requirement before he or she can be found disabled. *Lang v. Sec'y of Health and Human Servs.*, No. 88–1561, 1989 WL 40188, *2 (6th Cir. Apr.12, 1988) (citing 42 U.S.C. § 423(d)(1)(A)). "[A]n individual who satisfied the durational requirement of the Act may be entitled to benefits from the time his disability commences until such time as the disability ceases." *Id*. (citing *Howse v. Heckler*, 782 F.2d 626 (6th Cir.1986)). "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n. 2 (10th Cir.1999)

(quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir.1987)). In order to receive a closed period of benefits, a plaintiff must present evidence to establish that she "was continuously disabled for a period of twelve months, as is required by 42 U.S.C. § 423(d) (1)(A)." *Weeks v. Comm'r of Soc. Sec.*, No. 1:08–CV–148, 2009 WL 648603, \*6 (S.D. Ohio Mar.10, 2009).

## II.     ANALYSIS

The thrust of Claimant's argument is that even if substantial evidence might have otherwise supported the ALJ's determination that she did not experience at least twelve continuous months of disability, the case must be remanded because the ALJ failed to articulate why he rejected Dr. Terry's opinion that Claimant was limited to jobs requiring simple 1-2 step procedures and that also provided sufficient schedule flexibility to permit Claimant to obtain mental health treatment as needed. Commissioner's counsel conceded during argument that while the jobs that the vocational expert opined were available to Claimant before she regained the ability to work as a registered nurse required the ability to follow only simple instructions, they would have required Claimant to be able to follow more than 1-2 step procedures.

There is no dispute that Claimant suffered severe psychological symptoms following her second bout with COVID. (Tr. 13). In fact, Claimant was hospitalized at Pinewood Springs for mental health treatment from January 13-29, 2022. *Id.* at 598-616. At the time of her discharge, Claimant was noted to have no suicidal or homicidal ideations nor delusions, was "a bit mentally delayed[,]" and it had been recommended that she take leave from work. *Id.* at 603. While Claimant continued to report mental health symptoms and receive outpatient treatment and medication, it was not until February 20, 2023 that she was again hospitalized for mental health symptoms at Vanderbilt Psychiatric Hospital. *Id.* at 617-683. Claimant's records from that hospitalization acknowledge her hospitalization roughly a year ago for mental health treatment and note that "she had been doing well for the past several months on her regimen of lamictal" and other mental health

medications. (Tr. 619). The records further note that Claimant struggled with short-term memory loss and stopped taking her mental health medications for six days after she stopped using phone reminders to take it. Claimant stated that she hadn't slept in three days, was having racing thoughts, and was also having thoughts of killing her children although she would never harm them. *Id.* Upon discharge, Claimant denied suicidal and homicidal ideation, and auditory verbal hallucinations, had a eurythmic mood and congruent affect, and was noted to be picked up by her husband and young children. *Id.* at 625-626.

Of note, Claimant testified during her hearing before the ALJ that once she began taking Lamictal, she was able to concentrate again and that this was the medication that ultimately made a difference in her mental health. *Id.* at 47-48. As addressed above, during her admission to Vanderbilt Psychiatric Hospital, Claimant noted that she had been doing well for the past several months on her mental health medication regime, which included the Lamictal that she testified during the hearing had made all the difference. In other words, for at least several months prior to February 2023, Claimant had already become stable and able to concentrate. The ALJ concluded that based upon the record before him that Claimant's hospitalization at Vanderbilt was a brief setback due to failure to take her medication. (Tr. 21).

Additionally, although Claimant requested benefits for the period through April 15, 2024, the date she resumed working for the Health Department as she had done before contracting COVID, the Court observes that Claimant had applied for a job with Vanderbilt and was hired there in January 2024, and began working at the hospital in February 2024, although she ultimately found the work too taxing. (Tr. 38). Still, by January 2024, Claimant clearly not only considered herself able to work but specifically considered herself sufficiently recovered to resume her work as a registered nurse. Moreover, Claimant testified during the hearing before the ALJ that she had resumed homeschooling her children by roughly the end of May 2023. (Tr. 46). Given the above,

the Court must find that substantial evidence supports the ALJ's determination that Claimant did not experience sustained period of disability for twelve months or more.

Still, this finding does not necessarily end the inquiry. As discussed above, even when an ALJ's opinion is supported by substantial evidence it cannot be affirmed if the ALJ failed to comply with applicable law. In formulating Claimant's RFC, the ALJ found that she had a moderate limitation in concentrating, persisting, and maintaining pace until May 2023 and no more than a mild limitation thereafter. *Id.* at 13. The ALJ further determined that Claimant had occasional mood and memory/concentration deficits but that these functions generally fell within the normal range. *Id.* In support, the ALJ cited to Claimant's reports of the work she did to care for her home, family and horses, while acknowledging Claimant's need to have a reminder to take her medication. The ALJ also referenced the prior administration findings ("PAMFS") in support.

Claimant states that because the ALJ failed to include in his RFC formulation that Claimant be provided with a flexible work environment so that she could obtain mental health treatment as needed and be limited to performing jobs requiring only simple 1-2 step procedures, or, alternatively, to articulate why he found it unnecessary to include these limitations, this matter must be remanded for reconsideration of Claimant's RFC. However, the Court as its starting point must note that the ALJ is not required to articulate as to every opinion offered by a medical source. *Kerns v. Kijakazi*, No. 2:20-cv-265-DCP, 2022 WL 1110079, at *7 (E.D. Tenn., April 13, 2022) (referring to 20 C.F.R. § 404.1520c(a)) ("so long as the ALJ sufficiently articulates how the § 404.1520c factors of supportability and consistency were considered, it is appropriate for the ALJ to find a medical opinion generally persuasive and to adopt the limitations opined therein either in whole or in part."). Instead, the question is whether the ALJ's opinion when considered in total provides sufficient articulation as to why the ALJ would not have included certain limitations in formulating a claimant's RFC. *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar.

20, 2024); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 n.9 (6th Cir. 2014) (evaluating the ALJ's RFC analysis in the context of the entire decision and considering analysis in other sections of the decision when evaluating the RFC). Still, the ALJ must provide sufficient articulation regarding the supportability and consistency of the medical opinions offered to permit the Court to understand the reasons that the ALJ rejected or adopted these opinions, so that it can properly perform its appellate review. Although ALJs are not required to provide the same level of articulation in their decisions as was required prior to a 2017 regulation change, they still must "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors as to each medical opinion." *Kirkland v. Kijakazi*, No. 3:22-CV-60, 2023 WL 3205330, at *9 (E.D. Tenn. May 2, 2023) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588, 2021 WL 858662, at * 21 (N.D. Ohio Mar. 8, 2021)). Additionally, this level of articulation indicating a full review of the record is designed to protect a claimant from "bewilder[ment] when told by an administrative bureaucracy that she is not..." disabled when "[her] physician has deemed [her] disabled...." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170 at *6 (E.D. Mich. Aug. 13, 2021) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In considering the opinions offered by Dr. Terry which are at issue, the Court first observes that Dr. Terry offered these opinions in response to medical interrogatories posed to her by the ALJ without the benefit of independently assessing Claimant. There were multiple other medical sources who also offered opinions regarding Claimant's mental ability to perform work. One of those was Megan Christenberry, APRN, Plaintiff's treating provider. Ms. Christenberry opined that Claimant was unable to perform work due to her mental health conditions because she was unable to complete a normal workday or workweek without interruptions from her psychologically based symptoms,

which in turn prohibited her from meeting the competitive standards required in a work environment. (Tr. 856). At the same time, psychological consultants Jeffrey Bryant, Ph.D. and Cal VanderPlate, Ph.D. both determined that Plaintiff could perform, at minimum, an unlimited range of work involving simple tasks throughout her alleged period of disability. (Tr. 23-24, 62, 71, 74). The ALJ thoroughly addressed these medical source opinions in his decision and did so in the context of Claimant's own report of symptoms and activities and her hearing testimony.

With this background in mind, the Court will first consider whether the overall record demonstrates that the ALJ properly considered Dr. Terry's opinion that Claimant would need sufficient flexibility in her work schedule to obtain necessary mental health treatment. While there is no question that Claimant received extensive mental health treatment in late 2021 and early 2022, thereafter, as reflected in the ALJ's thorough summary of Claimant's medical records, Claimant's treatment was much more limited. (Tr. 15-23). Although Claimant did undergo another brief hospitalization in early 2023, as the ALJ rightly noted this was an isolated incident. Importantly, no other medical source who found that Claimant retained the capacity for performing work opined that Claimant would need to have a work schedule which was more flexible than typical to obtain necessary mental health treatment she needed. Given Claimant's more limited treatment visits after roughly March 2022, the Court finds that the ALJ did not err by failing to further articulate why he did not include a requirement for schedule flexibility in formulating Claimant's RFC, as the limited treatment he described Plaintiff receiving from March 2022 forward, with the exception of one additional but brief hospitalization, clearly demonstrates why he found such flexibility unnecessary and unsupported by record evidence.

The Court now turns to the issue of whether there is sufficient articulation in the ALJ's opinion to support his omission of a limit requiring that Claimant perform work that involves no more than 1 to 2-step procedures. As with the flexibility limitation, Dr. Terry was also the only

medical source who opined that Claimant's ability to perform work was limited to 1 to 2-step procedures. In the interrogatory responses Dr. Terry provided on March 10, 2024, she noted in a check-the-box form that Claimant had no limitations on understanding and remembering, and carrying out simple instructions, and only mild limitations in performing most other mental tasks. (Tr. 891-892). Dr. Terry found that Claimant had moderate limitations in making judgments on complex work-related decisions and responding appropriately to usual work situations, in adapting to changes in a routine work setting, and in concentrating, persisting, and maintaining pace. (Tr. 891-892, 896). In support of her conclusions, Dr. Terry observed that in Claimant's medical records from March 2022, Claimant reported retaining the ability to engage in activities of daily living and perform household chores such as cleaning, cooking, and laundry. *Id.* at 891. Dr. Terry also found that Claimant was unable to manage her own benefits based on the medical records before her. *Id.* at 893. It was only in her further response to the ALJ's interrogatories on March 15, 2024, that Dr. Terry included Claimant being limited to performing simple work requiring only a 1 to 2-step procedure. (Tr. 910).

Of note, in neither of Dr. Terry's responses did she state whether she found Claimant's abilities to perform mental work to have changed over the period for which she had reviewed records. And, Dr. Terry did not have the benefit of hearing the testimony Claimant offered during her hearing before the ALJ where the ALJ learned that Claimant had applied to return to work as an RN at least by January 2024 and was back on the job performing her nursing duties as of February 2024.

As a starting point, it would have been beneficial for the ALJ to specifically address in his opinion Dr. Terry's finding that Claimant was limited to jobs requiring only 1 to 2-step procedures. Still, as explained above, the Court must review his decision as a whole in determining whether his failure to do so constituted error. The ALJ made it clear in his opinion that he found Dr. Terry's

opinion only "mostly persuasive." Dr. Terry's documentation of Claimant's own report that she was able to continue to perform activities of daily living, clean, cook, and do laundry undercuts her opinion that Claimant was limited to 1 to 2-step procedures as each of these tasks Claimant reported performing would be expected to involve more than a 2-step process. Moreover, Claimant had been able to care for and ride horses at times over this period and by the end of May 2023, had returned to homeschooling her children. (Tr. 21). These activities reported by Claimant also demonstrate a clear ability to perform work involving more than 1 to 2-step procedures. Through his discussion of the opinions of the psychological consultants, who both opined that Claimant retained the capacity for unlimited simple work, and his discussion of Claimant's reported activities, the Court concludes that the ALJ sufficiently articulated his reasoning as to the supportability and consistency of the medical opinion evidence for the Court to conduct the required appellate review of his decision.

### III. CONCLUSION

Because the Court has determined that substantial evidence supported the ALJ's decision and that he conformed to the relevant legal standards, the Court must **DENY** the relief requested in Claimant's Complaint, Brief, and Reply [Docs. 1, 11, & 17]. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Accordingly, the final decision of the agency is **AFFIRMED**.

SO ORDERED:

/s/Cynthia Richardson Wyrick
United States Magistrate Judge